**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ALEXANDER LUNDRIGAN, individually and as a representative of the Class, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| INFORMATIVE RESEARCH, INC., | ) |
| | ) |
| Defendant. | ) |

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446, Defendant Informative Research, Inc.

("Informative Research"), by undersigned counsel, hereby files this Notice of Removal of the

above-captioned action from the Circuit Court of Cook County, Illinois, to the United States

District Court for the Northern District of Illinois, Eastern Division, and in support of this Notice,

states as follows:

**BACKGROUND**

1.      On July 10, 2025, Plaintiff Alexander Lundrigan ("Plaintiff") filed his Class Action

Complaint ("Complaint") captioned *Alexander Lundrigan v. Informative Research, Inc.* in the

Circuit Court of Cook County, Illinois, Chancery Division, which was docketed as Case No.

2025CH07232 (the "State Court Action").

2.      On July 14, 2025, Plaintiff served Informative Research with the Summons and

Complaint (attached hereto as Ex. 1) by Process Server via its registered agent.

3.      Informative Research has not answered, moved, or otherwise responded to the

Complaint in the State Court Action.

4.      Copies of the Cook County docket, all process, pleadings, and orders received by Informative Research as of the date of filing of this Notice of Removal are filed herewith as **Exhibit 1**.

5.      In the Complaint, Plaintiff alleges that he was adversely impacted by Informative Research's tri-merger report, an aggregate consumer credit report, in connection with Plaintiff's attempt to obtain a mortgage loan, which Plaintiff ultimately procured. Ex. 1, Compl., ¶¶ 5-6, 34. According to Plaintiff, Informative Research failed to deduplicate certain student loan records relating to him after Informative Research received certain information from the three major credit reporting agencies – Equifax, Experian, and TransUnion – which resulted in the appearance that Plaintiff's student loan debt was double the correct amount. *Id.*, ¶¶ 2-5.

6.      Plaintiff alleges, on behalf of himself and a proposed class, that Informative Research lacks reasonable procedures to prevent the alleged inaccuracies mentioned in Plaintiff's Complaint in violation of the Fair Credit Reporting Act ("FCRA"). *Id.*, ¶¶ 8, 11-12.

7.      On behalf of himself and a proposed class, Plaintiff seeks actual and/or statutory damages of "not less than $100 and not more than $1000 for each and very violation," punitive damages, costs, and attorneys' fees. *Id.*, ¶ 63.

## FEDERAL QUESTION JURISDICTION EXISTS UNDER 28 U.S.C. § 1331

8.      This action is removable under 28 U.S.C. §§ 1331 and 1441(a) because it is a civil action in which Plaintiff has asserted a claim arising under the laws of the United States, namely the FCRA. Ex. 1, Compl. at pp. 11-12.

9.      All of Plaintiff's allegations arise from Informative Research's tri-merger credit reporting relating to Plaintiff's account and Plaintiff alleges that Informative Research's actions constitute a violation of Section 1681e(b) of the FCRA. *Id.*, ¶¶ 56-63. Plaintiff further alleges that

Informative Research's conduct caused him and members of the proposed class to suffer harm, including "financial harm, harm to economic opportunities, emotional distress, and reputational harm." *Id*., ¶ 60. Plaintiff does not assert any other claims. *Id*., ¶¶ 56-63

10.     As the Complaint asserts a claim under the FCRA, a federal statute, this Court has original jurisdiction over the case. *See*, *e.g.*, *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 429 (7th Cir. 2009) ("The federal court had original jurisdiction over the FCRA claim.").

## ALL OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

11.     Pursuant to 28 U.S.C. §§ 93(a)(1) and 1441(a), the United States District Court for the Northern District of Illinois, Eastern Division, is the proper venue for removal jurisdiction because it embraces Cook County, Illinois, the place where the State Court Action is pending.

12.     Pursuant to 28 U.S.C. § 1446(b), Informative Research, the only defendant in this case, is timely filing this Notice of Removal within thirty (30) days after receipt, through service, of the Complaint.

13.     Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal is being served on Plaintiff via counsel and the Notice of Filing of Notice of Removal will be filed with the Clerk of the Circuit Court of Cook County, Illinois.

## RESERVATION OF RIGHTS AND DEFENSES

14.     By filing this Notice of Removal, Informative Research does not waive and reserves any defenses that may be available to it. In addition, Informative Research does not concede that Plaintiff states any claim upon which relief can be granted, or that Plaintiff is entitled to any relief of any kind or nature. If any questions arise as to the propriety of the removal of this action, Informative Research respectfully requests the opportunity to submit additional papers and/or to present oral argument.

15.     Undersigned counsel has read the foregoing and signs this Notice of Removal pursuant to Rule 11 of the Federal Rules of Civil Procedure, as required by 28 U.S.C. ¶ 1446(a).

**WHEREFORE**, Defendant Informative Research, Inc. hereby removes the State Court Action under Case No. 2025CH07232 from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois, Eastern Division, for all further proceedings.

Dated August 12, 2025                            Respectfully submitted,


                                                  /s/ Paul Ferak
                                                 Paul Ferak
                                                 Ian D. Burkow
                                                 Greenberg Traurig, LLP
                                                 360 N. Green St., Suite 1300
                                                 Chicago, IL 60607
                                                 ferakp@gtlaw.com
                                                 burkowi@gtlaw.com
                                                 Tel: 312.456.8400

                                                 *Counsel for Defendant Informative Research, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies, under penalties of perjury, that on August 12, 2025, she caused a copy of the foregoing Notice of Removal and all attendant exhibits to be served electronically through the court's CM/ECF electronic filing system on all parties of record.

*/s/ Trudy K. Brown*

# EXHIBIT 1

District 1

# Case Summary

### Case No. 2025CH07232

| | | | |
|---|---|---|---|
| **Alexander Lundrigan-vs-Informative Research, Inc.** | § | Location: | **District 1** |
| | § | Judicial Officer: | **Calendar, 16** |
| | § | Filed on: | **07/10/2025** |
| | § | Cook County Attorney Number: | **59407** |

---

## Case Information

| | | |
|---|---|---|
| | Case Type: | Class Actions |
| | Case Status: | **07/10/2025 Pending** |

---

## Assignment Information

**Current Case Assignment**
Case Number       2025CH07232
Court               District 1
Date Assigned    07/10/2025
Judicial Officer   Calendar, 16

---

## Party Information

*Lead Attorneys*

| | | |
|---|---|---|
| **Plaintiff** | **Lundrigan, Alexander** | **Albanese, John Gerard** <br> *Retained* |
| **Defendant** | **Informative Research, Inc.** | |

---

## Events and Orders of the Court

09/08/2025   **Case Management**   (10:30 AM)   (Judicial Officer: Atkins, David B.)
         Resource: Location CH2102 Court Room 2102
         Resource: Location D1 Richard J Daley Center

07/21/2025  
Proof Of Service Filed
     *Proof of Service of Summons and Complaint*
     Party: Plaintiff Lundrigan, Alexander
     *Proof of Service of Summons and Complaint*

07/10/2025   New Case Filing

07/10/2025  
Class Action Complaint Filed (Jury Demand)
     Party: Plaintiff Lundrigan, Alexander
     Party 2: Attorney Albanese, John Gerard

07/10/2025  
Exhibits Filed
     Party: Plaintiff Lundrigan, Alexander
     Party 2: Attorney Albanese, John Gerard

07/10/2025  
Summons Issued And Returnable
     *Proposed Summons*
     Party: Plaintiff Lundrigan, Alexander
     Party 2: Attorney Albanese, John Gerard

**District 1**

## Case Summary

### Case No. 2025CH07232

*Proposed Summons*

07/10/2025

Exhibits Filed
*Chancery Case Cover Sheet*
Party:   Plaintiff Lundrigan, Alexander
Party 2:   Attorney Albanese, John Gerard
*Chancery Case Cover Sheet*

Hearing Date: 9/8/2025 10:30 AM
Location: Court Room 2102
Judge: Atkins, David B.

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

7/10/2025 4:02 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025CH07232
Calendar, 16
33513392

Chancery Division Civil Cover Sheet
General Chancery Section                                          (12/01/24) CCCH 0623

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

Alexander Lundrigan, individually & as representative of the Class,
_____
                                    Plaintiff
                    v.                                    Case No: __2025CH07232__
_____
Informative Research, Inc.,
_____
                                    Defendant

### CHANCERY DIVISION CIVIL COVER SHEET
### GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General
Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in
front of the appropriate category which best characterizes your action being filed.

**Only one (1) case type may be checked with this cover sheet.**

| | | |
|---|---|---|
| 0005 | ☐ | Administrative Review |
| 0001 | ☑ | Class Action |
| 0002 | ☐ | Declaratory Judgment |
| 0004 | ☐ | Injunction |
| | | |
| 0007 | ☐ | General Chancery |
| 0010 | ☐ | Accounting |
| 0011 | ☐ | Arbitration |
| 0012 | ☐ | Certiorari |
| 0013 | ☐ | Dissolution of Corporation |
| 0014 | ☐ | Dissolution of Partnership |
| 0015 | ☐ | Equitable Lien |
| 0016 | ☐ | Interpleader |

| | | |
|---|---|---|
| 0017 | ☐ | Mandamus |
| 0018 | ☐ | Ne Exeat |
| 0019 | ☐ | Partition |
| 0020 | ☐ | Quiet Title |
| 0021 | ☐ | Quo Warranto |
| 0022 | ☐ | Redemption Rights |
| 0023 | ☐ | Reformation of a Contract |
| 0024 | ☐ | Rescission of a Contract |
| 0025 | ☐ | Specific Performance |
| 0026 | ☐ | Trust Construction |
| 0050 | ☐ | Internet Take Down Action (Compromising Images) |

☐ Other (specify) _____

⦿ Atty. No.: __6308461__        ◯ Pro Se 99500

Atty Name: __John G. Albanese__

Atty. for: __Plaintiff__

Address: __Berger Montague, 1229 Tyler St NE, Ste 205__

City: __Minneapolis__        State: __Mn__

Zip: __55413__

Telephone: __6125945997__

Primary Email: __jalbanese@bergermontague.com__

Pro Se Only: ☐ I have read and agree to the terms of the Clerk's
Clerk's Office Electronic Notice Policy and
choose to opt in to electronic notice from the
Clerk's office for this case at this email address:

Email: _____

**Mariyana T. Spyropoulos, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

Hearing Date: 9/8/2025 10:30 AM
Location: Court Room 2102
Judge: Atkins, David B.

Case: 1:25-cv-09574 Document #: 1 Filed: 08/12/25 Page 10 of 52 PageID #:10

**12-Person Jury**

For updated information about your case, including hearings, subsequent filings
and other case information, please visit our Online Case Search
and search for your case: https://casesearch.cookcountyclerkofcourt.org

FILED
7/10/2025 4:02 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025CH07232
Calendar, 16
33513392

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

## CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## CHANCERY DIVISION

| | |
|---|---|
| ALEXANDER LUNDRIGAN, individually and as a representative of the Class,<br><br>Plaintiff,<br><br>vs.<br><br>INFORMATIVE RESEARCH, INC.,<br><br>Defendant. | Civil Action No. 2025CH07232<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Alexander Lundrigan ("Plaintiff"), brings this Class Action Complaint against Informative Research, Inc. ("Defendant" or "Informative"), on behalf of himself and the Class set forth below:

### INTRODUCTION

1. This is a class action for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, against Defendant, which is a consumer reporting agency that routinely violates the FCRA's basic protections by reporting inaccurate information.

2. Defendant is a consumer reporting agency that assembles consumer reports from data received from other consumer reporting agencies. Specifically, Defendant assembles tri-merge reports, which are used in mortgage lending. Defendant obtains a consumer's credit reports from each of the three major credit reporting agencies ("CRAs"), Equifax, Experian, and Transunion, assembles that information into a single report and then, for a monetary fee, sends that report to a mortgage lender, who uses it to determine whether to approve or deny a consumer's mortgage application.

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

3.      A crucial aspect of Defendant's role is deduplicating records. It is exceedingly common for Equifax, Experian, and Transunion to all report to Defendant information about the same account or debt, and, in order to provide an accurate report, Defendant must recognize when that is the case, and avoid reporting the same account two or three times even where there are minor differences in what is reported.

4.      However, in compiling and passing on these tri-merge reports, Defendant has inadequate procedures or safeguards in place to make sure that the data it is reporting about consumers is accurate or even logical. Instead, Defendant reproduces the information that it receives from each of the three major CRAs, even if that information is duplicative.

5.      In Plaintiff's case, Defendant received data from Equifax, Experian, and Transunion regarding Plaintiff's student loans, and reported each of those loans twice, doubling Plaintiff's student debt, even though a proper review of the data underlying the report would have made the error clear. Rather than take any steps to correct this error, however, Defendant simply reported this inaccurate information to Plaintiff's lender.

6.      Defendant provided this information without any safeguards in place to prevent the inaccurate reporting, and despite the fact that it was widely known and reported that loans from Plaintiff's particular lender often showed up twice on credit reports. This caused Plaintiff's credit to appear worse than it should have, greatly complicating his efforts to qualify for a mortgage.

7.      Defendant's reporting about Plaintiff results from its independent and automated procedures, which have affected scores of many other consumers.

8.      Defendant's lack of procedures to prevent these serious inaccuracies violates the FCRA.

FILED DATE: 7/10/2025 4:02 PM 2025CH07232

9.      When enacting the FCRA, Congress found that consumer reporting agencies "have assumed a vital role in assembling and evaluating . . . information on consumers." 15 U.S.C. § 1681(a)(3). Thus, Congress saw a need to ensure that consumer reporting agencies "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." Id. § 1681(a)(4). To accomplish Congress' goal, the FCRA contains several requirements to protect consumers, including § 1681e(b), which is one of the statute's cornerstone provisions.

10.     Section 1681e(b) requires that consumer reporting agencies follow reasonable procedures to assure maximum possible accuracy of the information on the individuals about whom they report. 15 U.S.C. § 1681e(b). This section imposes a high standard on consumer reporting agencies. *See, e.g., Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b) and explaining that "'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived'" (quoting Webster's Third New International Dictionary 133, 1396, 1771 (1993))).

11.     Resellers like Defendant, no less than other types of consumer reporting agencies, are subject to the FCRA's requirements to use reasonable procedures to assure maximum possible accuracy whenever they furnish a consumer report. 15 U.S.C. § 1681a(u) (defining "resellers" as a type of "consumer reporting agency").

12.     Defendant violated these requirements when it automatically included facially inaccurate information in Plaintiff's and the putative class members' tri-merge reports without any meaningful procedures to prevent the inaccuracies.

3

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

13.     As a result of Defendant's conduct, Plaintiff brings claims for Defendant's failure to use reasonable procedures to ensure maximum possible accuracy in violation of 15 U.S.C. § 1681e(b).

14.     Defendant committed these violations pursuant to standard policies and procedures. Because Defendant's violations arose from its standard policies, practices, and procedures, Plaintiff brings his claims on behalf of proposed Class, defined below.

15.     On behalf of himself and the proposed Class, Plaintiff seeks statutory and punitive damages, injunctive relief, costs, and attorneys' fees for Plaintiff and the Class against Defendant for its willful violations of the FCRA.

## THE PARTIES

16.     Plaintiff Alex Lundrigan is a natural person who lives in Chicago, Illinois, and is a "consumer" as that term is defined in the FCRA.

17.     Defendant Informative Research, Inc. is a consumer reporting agency headquartered in Garden Grove, California and organized under the laws of the state of California. Defendant claims to serve "over 3,000 mortgage companies, banks and lenders throughout the United States." Defendant claims to have developed "the industry's first TriMerge Credit Report" in 1978.[1]

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over Plaintiff's claims under 15 U.S.C. § 1681p, which permits claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

19.     This Court has jurisdiction over Plaintiff's claims and personal jurisdiction over Defendant pursuant to the Illinois Code of Civil Procedure because Defendant does business within this state, transacts business within this state, and many of the events or omissions giving

---

[1] Informative Research, *About Us*, www.informativeresearch.com/about-us/ (last visited July 9, 2025).

4

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

rise to this claim occurred in this state.

20.     Venue is proper in this Court pursuant to 735 ILCS 5/2-101 because a substantial part of the events or omissions giving rise to the claims occurred in this County, and because Plaintiff resides in this County.

## BACKGROUND

21.     The FCRA was enacted based on Congress's findings that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "there is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.  Thus, the FCRA requires consumer reporting agencies to operate "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *Id.*

22.     The FCRA requires that consumer reporting agencies maintain reasonable procedures to ensure "maximum possible accuracy" of the information included in the reports they produce. 15 U.S.C. § 1681e(b).

23.     Defendant systematically and purposefully disregards its "grave responsibilities" by routinely reporting inaccurate student loan information on consumers in violation of the FCRA.

## FACTUAL ALLEGATIONS RELATING TO PLAINTIFF

24.     Plaintiff has seven student loans and around $80,000 in outstanding student loan debt. His loans are serviced by The Missouri Higher Education Loan Authority ("MOHELA") which contracts with the Department of Education to service federally backed student loans.  Prior to MOHELA, his loans were serviced by Nelnet.

5

FILED DATE: 7/10/2025 4:02 PM  2025CH07232

25.     In November 2024, Plaintiff began the process of shopping for a new home and mortgage. Plaintiff eventually decided to obtain a mortgage from Wintrust Mortgage ("Wintrust"). He was pre-approved for a mortgage, and put $15,000 into escrow.

26.     But before Plaintiff could close on the loan, he was told by representatives of Wintrust that his overdue student debt balance reported by Defendant made it so he could not obtain a mortgage because his debt-to-income ratio was too high.

27.     At that time, he discovered that his credit report issued by Defendant falsely reflected about $160,000 in student debt. (Ex. A.)

28.     All of Plaintiff's student loans appeared twice on Defendant's report, once under the name "MOHELA" and again under the name "MOHELA/Dept of Ed." Per the report, Defendant obtained information from Experian regarding the accounts listed under "MOHELA/Dept of Ed" and information from Transunion and Equifax regarding the accounts listed under "MOHELA." While the information from Transunion and Equifax was combined on the report into one tradeline, the information from Experian was reported as a separate tradeline, making it appear as though he had 14 loans totaling $160,000 instead of 7 loans totaling $80,000.

29.     The duplicated tradelines had the same account opening date ("Opened Date"), the same loan amount ("High Credit"), the same payment amount, the same loan terms ("Terms"), the same "account type" and the same number of "Times Past Due."

30.     The information from Experian, however, was slightly older (with the information current as of April 24, 2024) than the Transunion and Equifax information (which was current as of September 24, 2024) and subsequently had slightly different balances reflecting the 5 months of additional payments for the information provided by Equifax and Transunion. The Experian information also had a different account number than the Transunion and Equifax information.

FILED DATE: 7/10/2025 4:02 PM    2025CH07232

31.     Therefore, as a result of Defendant's failure to de-duplicate, the consumer report that Plaintiff's mortgage lender received from Defendant included an inflated "Number of Open Trades," "Number of Trades w/Balances," "Installments – Monthly Payments," and "Installments – Outstanding Balance." All of these numbers were higher than they should have been, and all of these inaccurate figures make Plaintiff appear to be a worse candidate for a mortgage loan than he is in fact.

32.     The problems with duplicative reporting are widespread and notorious. In May 2024, the Washington Post published an article about duplicative reporting of MOHELA accounts due to issues regarding a transfer of servicers from Nelnet to MOHELA. (*See* Ex. B.) Per a Senate investigation into these issues, there were hundreds of thousands of duplicative tradelines reported affecting tens of thousands of consumers. (Ex. C.)

33.     Plaintiff was unable to explain the report and proceed with his loan application. Instead, the loan officer told Plaintiff that, in order to override the reporting as shown on the face of Defendant's consumer report, the loan officer needed Plaintiff to provide a letter from a Vice President of MOHELA.

34.     After contacting various parties to try to obtain the information his loan officer demanded in order to correct Defendant's inaccurate reporting, Plaintiff appealed to the Federal Student Aid Ombudsman, who provided a letter confirming his accurate student debt amount. Wintrust accepted that letter and Plaintiff was able to close on the mortgage.

35.     Plaintiff estimates that he spent about 48 hours total on the phone trying to fix this issue, including with Wintrust, MOHELA, the Federal Student Aid Ombudsman's office, and other mortgage lenders to see if they might accept other records in order to override the erroneous credit report.

7

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

36.     Because Defendant is one of the nation's leading tri-merge providers, and because Plaintiff may apply for a loan in the future, he is at risk of future duplicative reporting by Defendant.

## DEFENDANT'S FAILURE TO ADOPT REASONABLE PROCEDURES

37.     Consumer reporting agencies are required to adopt reasonable procedures to ensure maximum possible accuracy of the information included in the reports they issue. 15 U.S.C. § 1681e(b).

38.     The obligations of 15 U.S.C. § 1681e(b) require both that the information presented in consumer reports be factually accurate, and also that the information be presented in such a way as to not be misleading.

39.     Duplicative reporting has long been held to violate the FCRA because it is misleading. *See, e.g., Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 503 (D. Md. 2004); (denying summary judgment for debt collector who double-reported for same debt from two different office locations under two separate account numbers); *see also Cook v. Mountain Am. Fed. Credit Union*, 2018 WL 3707922, at *4 (D. Ariz. 2018) (noting that "it is plausible that the double reporting of plaintiff's debt would mislead and adversely affect credit decisions").

40.     The information in Defendant's report on Plaintiff is facially inaccurate – on the first page of the report, Defendant doubled Plaintiff's installment loan monthly payments, installment loan outstanding balance, number of open tradelines, and number of open tradelines with a balance.

41.     Defendant knows that student loan servicers report to Equifax, Experian, and Transunion, and that all three CRAs should be reporting the same information to Defendant. Defendant should have had flags in place to identify instances where it was receiving slightly different information about student loans from the CRAs.

8

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

42. Defendant could have easily minimized the risk of duplicative reporting by programing its systems to recognize that "MOHELA" and "MOHELA/Dept of Ed" were the same entity or programming its systems to flag potential duplicative reporting when there are a number of important fields that match across loans like there were here. MOHELA is a major student loan servicer for the federal Department of Education, so putting this procedure in place would prevent thousands of errors. These kinds of procedures are common in the credit reporting industry, and should have been employed here, but were not.

43. This is especially true given that the issue with MOHELA duplicative reporting in particular was widely known and publicized. Defendant could and should have corrected for this known issue.

44. Instead, Defendant uses flawed automated processes to report duplicative student loans on its reports and does not have robust automated processes to ensure that errors to do not occur. Nor does Defendant conduct any human review of its reports.

45. Defendant's inaccurate reporting harms consumers by making them appear to be less than desirable applicants than they, in fact, are. In particular, for mortgage and credit card applications, it severely changed debt-to-income ratios that are determinative in making credit decisions.

46. If Defendant had reasonable procedures to assure maximum possible accuracy, it would not have doubled Plaintiff's student debt.

47. Accordingly, Defendant has routinely, systematically, and willfully violated the FCRA.

## CLASS ACTION ALLEGATIONS

48. Plaintiff brings his claims on behalf of the Class:

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

The Class:
All consumers who were: (1) subject to at least one consumer report issued by Defendant within the two years prior to the filing date of this complaint; (2) which included at least one entry for "MOHELA" and at least one entry for "MOHELA/Dept of Ed" or which otherwise reported a single account with a creditor as multiple accounts.

49.   Certification of the Class is appropriate 735 ILCS 5/2-801.

50.   Numerosity: The Class are so numerous that joinder of the claims of all class members is impractical. Membership in the Class can be ascertained though Defendant's records.

51.   Existence and Predominance of Common Questions of Law and Fact: Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant has unreasonable procedures for reporting duplicative information; (b) whether this conduct violated the FCRA; and (c) whether the violations were willful, reckless, knowing, or intentionally committed in conscious disregard of the Plaintiff's and class members' rights.

52.   Typicality: Plaintiff's claims are typical of the claims of each member of the Class he represents, and all claims are based on the same facts and legal theories. Plaintiff, as every class member, alleges violations of the same FCRA provision, 15 U.S.C. § 1681e(b). The claims challenge Defendant's consumer reporting procedures and do not depend on any individualized facts.

53.   Adequacy: Plaintiff will fairly and adequately protect the class members' interests. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor his counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the class members and have accepted such responsibilities.

54.   Certification of the Class is appropriate because:

10

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

a.     As alleged above, the questions of law or fact common to the class members predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues.

b.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims are generally ideal for class treatment as they involve many consumers who are unable to afford and bring such claims individually. Further, most consumers affected by Defendant's conduct are likely unaware of their rights under the law. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class-wide and should be resolved at one time.

55.     Plaintiff intends to send notice to all members of the Class. The identities of the class members are available from Defendant's records.

## CAUSE OF ACTION

### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### On behalf of Plaintiff and the Class

56.     Plaintiff re-alleges and incorporate the allegations set forth above as if fully stated herein.

57.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

58.     Defendant prepared false consumer reports concerning Plaintiff and the Class, falsely indicating that they had more student loan debt than they actually did.

11

59.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to ensure maximum possible accuracy in the preparation of the consumer reports it furnished and maintained concerning Plaintiff and the members of the Class.

60.    As a result of Defendant's conduct, Plaintiff and the Class suffered harm including but not limited to financial harm, harm to economic opportunities, emotional distress, and reputational harm.

61.    Defendant's violations were negligent and/or willful.

62.    Defendant's conduct was willful because it was carried out in knowing or reckless disregard for consumers' rights under the FCRA. Defendant's conduct was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that other consumer reporting agencies have been subject to court decisions and consumer complaints critical of similar conduct; and Defendant will continue to engage in this conduct because it believes there is greater economic value in selling over-inclusive, inaccurate consumer reports than engaging in the due diligence that would be necessary to produce accurate reports.

63.    Plaintiff and members of the Class are entitled to actual damages and/or statutory damages of not less than $100 and not more than $1,000 for each and every violation and are further entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o. Plaintiff and members of the Class are also entitled to punitive damages pursuant to 15 U.S.C. § 1681n(a)(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, pray for relief as follows:

a)    Determining that this action may proceed as a class action;

b)    Designating Plaintiff as the representative for the Class;

12

c)    Designating Plaintiff's Counsel as counsel for the Class;

d)    Issuing notice to the Class at Defendant's expense;

e)    Declaring that Defendant committed multiple, separate violations of the FCRA;

f)    Declaring that Defendant acted willfully and in deliberate or reckless disregard of the rights of Plaintiff and the Class under the FCRA;

g)    Awarding actual, statutory, punitive damages as provided by the FCRA;

h)    Awarding reasonable attorneys' fees and costs and expenses, as provided by the FCRA; and

i)    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

64.    Plaintiff, on behalf of himself and the Class, demands a trial by jury on all issues triable by a jury.

Respectfully submitted,

Date:    July 10, 2025

*/s/John G. Albanese*
John G. Albanese, ARDC# 6308461
jalbanese@bm.net
E. Michelle Drake*
emdrake@bm.net
Joseph C. Hashmall*
jhashmall@bm.net
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
T. 612.594.5999; F. 612.584.4470

Brian Shearer*
brian.shearer.law@gmail.com
BRIAN SHEARER LAW, PLLC
1291 Delaware Ave SW
Washington, DC 20024

*pro hac vice forthcoming*
*Counsel for Plaintiff*

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

13

Hearing Date: 9/8/2025 10:30 AM
Location: Court Room 2102
Judge: Atkins, David B.

FILED
7/10/2025 4:02 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025CH07232
Calendar, 16
33513392

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

**EXHIBIT A**



13030 EUCLID STREET
STE. 100
GARDEN GROVE, CA 92843
www.informativeresearch.com

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

| | | | |
|---|---|---|---|
| **Attention:** | rcurtis | **Report Type:** | Consumer Copy |
| **Client Name:** | WINTRUST MORTGAGE A DIV OF BARRINGTON BK & TRUST CO NA | **Sources:** | XPN TU EFX |
| **Client ID:** | 2008125 | **Order Number:** | 1015611895PQ |
| **Loan Number:** | | **Original Order Number:** | |
| **First Issued:** | 10/23/2024 | | |
| **Last Updated:** | 10/23/2024 | | |

### Borrower Information

| | | | |
|---|---|---|---|
| **Borrower:** | Alex Lundrigan | **Co-Borrower:** | |
| **Borrower SSN:** | | **Co-Borrower SSN:** | |
| **Borrower DOB:** | | **Co-Borrower DOB:** | |
| **Current Address:** | | Chicago, IL | |

### Attention Borrower

Informative Research has been contracted by WINTRUST MORTGAGE A DIV OF BARRINGTON BK & TRUST CO NA to compile a credit report in association with your mortgage application.

If you have any questions, concerns, or feel that your credit report is incorrect, you can call us at 800-473-4633 or visit us at: www.informativeresearch.com/consumer-disputes and complete a credit dispute form. You can send the completed form via email to consumerdisputes@informativeresearch.com or mail it to:

Informative Research
C/O Disputes
PO Box 2379
Garden Grove, CA 92842

The credit bureau or credit agency plays no part in the decision to take any action on your mortgage application request and is unable to provide you with reasons for decisions made on your application.

Include documentation directly from the creditor to speed up the process in any dispute(s) made directly to a credit reporting agency.

Creditors are required by law to update the three national credit repositories (Equifax, Experian, and TransUnion) with any corrective action taken.

The below report is for the borrower(s) personal use only and cannot be shared with any third parties.

### Summary

| | Borrower |
|---|---|
| Number of Trades Reported | 25 |
| Number of Open trades | 23 |
| Number of Trades w/Balance | 23 |
| Number of Inquiries last 120 days | 8 |
| Number of Delinquent Trades | 0 |
| Number of 30 Day Mortgage Delinquencies | 0 |
| Number of 60 Day Mortgage Delinquencies | 0 |
| Number of 90 Day Mortgage Delinquencies | 0 |
| Installments - Monthly Payments | |
| Installments - Outstanding Balance | |
| Revolving - Monthly Payments | |
| Revolving - Outstanding Balance | |
| Mortgage - Monthly Payments | |
| Mortgage - Outstanding Balance | |

### Collections

None Reported

FILED DATE: 7/10/2025 4:02 PM 2025CH07232

| Derogatory Tradelines | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|

None Reported

| Tradelines | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Creditor Name | Reported Date | Opened Date | Balance | Payment | Terms | Account Type | Times Past Due | | | |
| Account Number | DLA | ECOA | Credit Limit | High Credit | Current Status | Months Reviewed | 30 | 60 | 90+ | |
| MOHELA/DEPT OF ED | 04/24 | 09/20 | 35725 | 222 | 120 MO | Inst | | | | |
| *************0006 | 04/24 | B | | 35368 | 01 | 27 | 0 | 0 | 0 | |

Educational
ACCOUNT REPORTED FOR: BORROWER
XPN1

XPN1: OPEN ACCOUNT
XPN1: THIS IS AN ACCOUNT IN GOOD STANDING

| MOHELA | 09/24 | 09/20 | 35622 | 222 | 120 MO | Inst | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| *****************0523 | 09/24 | B | | 35368 | 01 | 48 | 0 | 0 | 0 | |

(800)866-4352
Educational
ACCOUNT REPORTED FOR: BORROWER
EFX1: TU1

EFX1: STUDENT LOAN ACCOUNT
EFX1: FIXED RATE

| MOHELA/DEPT OF ED | 04/24 | 09/20 | 20599 | 121 | 120 MO | Inst | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| *************0007 | 04/24 | B | | 20500 | 01 | 26 | 0 | 0 | 0 | |

Educational
ACCOUNT REPORTED FOR: BORROWER
XPN1

XPN1: OPEN ACCOUNT
XPN1: THIS IS AN ACCOUNT IN GOOD STANDING

| MOHELA | 09/24 | 09/20 | 20480 | 121 | 120 MO | Inst | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| *****************0523 | 09/24 | B | | 20500 | 01 | 48 | 0 | 0 | 0 | |

(800)866-4352
Educational
ACCOUNT REPORTED FOR: BORROWER
EFX1: TU1

EFX1: STUDENT LOAN ACCOUNT
EFX1: FIXED RATE




FILED DATE: 7/10/2025 4:02 PM   2025CH07232

| Tradelines | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Creditor Name | Reported Date | Opened Date | Balance | Payment | Terms | Account Type | Times Past Due | | | |
| Account Number | DLA | ECOA | Credit Limit | High Credit | Current Status | Months Reviewed | 30 | 60 | 90+ | |

| MOHELA/DEPT OF ED | 04/24 | 08/16 | 7217 | 51 | 120 MO | Inst | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| *************0004 | 04/24 | B | | 7500 | 01 | 66 | 0 | 0 | 0 | |
| Educational | | | | | | | | | | |
| ACCOUNT REPORTED FOR: BORROWER | | | | | | | | | | |
| XPN1 | | | | | | | | | | |
| | | | | | | | | | | |
| XPN1: OPEN ACCOUNT | | | | | | | | | | |
| XPN1: THIS IS AN ACCOUNT IN GOOD STANDING | | | | | | | | | | |

| MOHELA | 09/24 | 08/16 | 7125 | 51 | 120 MO | Inst | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ******************* 0523 | 09/24 | B | | 7500 | 01 | 96 | 0 | 0 | 0 | |
| (800)866-4352 | | | | | | | | | | |
| Educational | | | | | | | | | | |
| ACCOUNT REPORTED FOR: BORROWER | | | | | | | | | | |
| EFX1 TU1 | | | | | | | | | | |
| | | | | | | | | | | |
| EFX1: STUDENT LOAN ACCOUNT | | | | | | | | | | |
| EFX1: FIXED RATE | | | | | | | | | | |

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

| Tradelines | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Creditor Name | Reported Date | Opened Date | Balance | Payment | Terms | Account Type | Times Past Due | | | |
| Account Number | DLA | ECOA | Credit Limit | High Credit | Current Status | Months Reviewed | 30 | 60 | 90+ | |
| MOHELA/DEPT OF ED | 04/24 | 08/17 | 7069 | 51 | 120 MO | Inst | | | | |
| *************0005 | 04/24 | B | | 7500 | 01 | 66 | 0 | 0 | 0 | |
| Educational | | | | | | | | | | |
| ACCOUNT REPORTED FOR: BORROWER | | | | | | | | | | |
| XPN1 | | | | | | | | | | |
| | | | | | | | | | | |
| XPN1: OPEN ACCOUNT | | | | | | | | | | |
| XPN1: THIS IS AN ACCOUNT IN GOOD STANDING | | | | | | | | | | |
| MOHELA | 09/24 | 08/17 | 6993 | 51 | 120 MO | Inst | | | | |
| ******************* 0523 | 09/24 | B | | 7500 | 01 | 85 | 0 | 0 | 0 | |
| (800)866-4352 | | | | | | | | | | |
| Educational | | | | | | | | | | |
| ACCOUNT REPORTED FOR: BORROWER | | | | | | | | | | |
| EFX1 TU1 | | | | | | | | | | |
| | | | | | | | | | | |
| EFX1: STUDENT LOAN ACCOUNT | | | | | | | | | | |
| EFX1: FIXED RATE | | | | | | | | | | |
| MOHELA/DEPT OF ED | 04/24 | 08/15 | 6606 | 47 | 120 MO | Inst | | | | |
| *************0003 | 04/24 | B | | 6500 | 01 | 99 | 0 | 0 | 0 | |
| Educational | | | | | | | | | | |
| ACCOUNT REPORTED FOR: BORROWER | | | | | | | | | | |
| XPN1 | | | | | | | | | | |
| | | | | | | | | | | |
| XPN1: OPEN ACCOUNT | | | | | | | | | | |
| XPN1: THIS IS AN ACCOUNT IN GOOD STANDING | | | | | | | | | | |
| MOHELA | 09/24 | 08/15 | 6532 | 47 | 120 MO | Inst | | | | |
| ******************* 0523 | 09/24 | B | | 6500 | 01 | 99 | 0 | 0 | 0 | |
| (800)866-4352 | | | | | | | | | | |
| Educational | | | | | | | | | | |
| ACCOUNT REPORTED FOR: BORROWER | | | | | | | | | | |
| EFX1 TU1 | | | | | | | | | | |
| | | | | | | | | | | |
| EFX1: STUDENT LOAN ACCOUNT | | | | | | | | | | |
| EFX1: FIXED RATE | | | | | | | | | | |



FILED DATE: 7/10/2025 4:02 PM   2025CH07232



| Tradelines | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Creditor Name | Reported Date | Opened Date | Balance | Payment | Terms | Account Type | Times Past Due | | |
| Account Number | DLA | ECOA | Credit Limit | High Credit | Current Status | Months Reviewed | 30 | 60 | 90+ |
| MOHELA/DEPT OF ED | 04/24 | 08/14 | 3162 | 23 | 120 MO | Inst | | | |
| ************0001 | 04/24 | B | | 3500 | 01 | 99 | 0 | 0 | 0 |
| Educational | | | | | | | | | |
| ACCOUNT REPORTED FOR: BORROWER | | | | | | | | | |
| XPN1 | | | | | | | | | |
| XPN1: OPEN ACCOUNT | | | | | | | | | |
| XPN1: THIS IS AN ACCOUNT IN GOOD STANDING | | | | | | | | | |
| MOHELA | 09/24 | 08/14 | 3130 | 23 | 120 MO | Inst | | | |
| ******************0523 | 09/24 | B | | 3500 | 01 | 99 | 0 | 0 | 0 |
| (800)866-4352 | | | | | | | | | |
| Educational | | | | | | | | | |
| ACCOUNT REPORTED FOR: BORROWER | | | | | | | | | |
| EFX1 TU1 | | | | | | | | | |
| EFX1: STUDENT LOAN ACCOUNT | | | | | | | | | |
| EFX1: FIXED RATE | | | | | | | | | |

1015611895PQ

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

| Tradelines | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Creditor Name | Reported Date | Opened Date | Balance | Payment | Terms | Account Type | Times Past Due | | | |
| Account Number | DLA | ECOA | Credit Limit | High Credit | Current Status | Months Reviewed | 30 | 60 | 90+ | |
| MOHELA/DEPT OF ED | 04/24 | 08/14 | 2145 | 15 | 120 MO | Inst | | | | |
| ************0002 | 04/24 | B | | 2000 | 01 | 99 | 0 | 0 | 0 | |
| Educational | | | | | | | | | | |
| ACCOUNT REPORTED FOR: BORROWER | | | | | | | | | | |
| XPN1 | | | | | | | | | | |
| XPN1: OPEN ACCOUNT | | | | | | | | | | |
| XPN1: THIS IS AN ACCOUNT IN GOOD STANDING | | | | | | | | | | |
| MOHELA | 09/24 | 08/14 | 2123 | 15 | 120 MO | Inst | | | | |
| ******************* | 09/24 | B | | 2000 | 01 | 99 | 0 | 0 | 0 | |
| 0523 | | | | | | | | | | |
| (800)866-4352 | | | | | | | | | | |
| Educational | | | | | | | | | | |
| ACCOUNT REPORTED FOR: BORROWER | | | | | | | | | | |
| EFX1 TU1 | | | | | | | | | | |
| EFX1: STUDENT LOAN ACCOUNT | | | | | | | | | | |
| EFX1: FIXED RATE | | | | | | | | | | |



| Public Records |
|---|
| None Reported |

| Creditor Information List | | | |
|---|---|---|---|
| Creditor Name | Phone Number | Street Address | City, State Postal Code |

FILED DATE: 7/10/2025 4:02 PM    2025CH07232



| Creditor Name | Phone Number | Street Address | City, State Postal Code |
|---|---|---|---|
| IR/WINTRUST MORTGAGE | 9082063000 | 1235 W CHESTNUT ST # C | UNION, NJ 07083 |
| MOHELA | 8008664352 | 633 SPIRIT DRIVE | CHESTERFIELD, MO 63005 |
| WINTRUST MOR | 8478424500 | 9700 W HIGGINS RO | ROSEMONT, IL 60018 |

End of Report - 10/23/2024

1015611895PQ

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

**EXHIBIT B**

🕐 This article was published more than **1 year ago**

*Democracy Dies in Darkness*

**Higher Education**

# How a paperwork glitch is hurting student loan borrowers' credit scores

A problem with the transfer of student loan accounts is creating duplicate balances on credit reports, an error that can lower credit scores for millions of borrowers.

May 29, 2024

 By Danielle Douglas-Gabriel

With an eye toward purchasing her first home, Alexandra Pimentel was religiously checking her credit report. Everything seemed in order until April last year, when she noticed a glaring discrepancy with her student loans. Instead of listing the $45,000 she owes, the report showed double the amount.

One balance was listed under her current student loan servicer, Missouri Higher Education Loan Authority (MOHELA), while another was under her old servicer, Nelnet, which had transferred her account a month before. Pimentel, 32, did a Google search and found other borrowers in the same situation who said the duplicate record would disappear after a few months.

It didn't.

At least 1.4 million duplicate student loan records are appearing on credit reports, according to three people familiar with the matter who were not authorized to speak publicly. They say the number of affected people could be far greater as the problem is pervasive. Many borrowers have no idea this is happening, even as their credit score — a critical factor in determining how much you pay for car loans and mortgages — has declined.

The Education Department said it has received about 500 credit reporting complaints since December but cannot confirm how many are specifically related to the duplication issue. The department is providing a workaround for faster removal of the error but said a permanent solution will take time.

"This situation is dystopian," said Pimentel, who works for a nonprofit in Seattle. "It's been going on for months and months, despite everything I've done. It really destroys my trust in this entire process."

FILED DATE: 7/10/2025 4:02 PM  2025CH07232

When the discrepancy didn't disappear after a few months, Pimentel filed a dispute in February with the credit reporting agency Experian, which she said told her the servicers were reporting the loan accurately and nothing could be done. She then reached out to Nelnet and was told to contact MOHELA, who told her to contact Nelnet. Instead, she filed complaints against all three companies with the Consumer Financial Protection Bureau. The investigation revealed an error in the <u>transfer</u> of her loan, a problem plaguing scores of unaware borrowers.

---

**Got student loans?**

Many borrowers say they are stressed after the restart of student loan payments. Here's our guide to finding student loan repayment options that best fit your stage of life.

(Seth Wenig/AP)

---

A glitch in the transfer of student loan accounts between servicing companies has resulted in balances accidentally appearing twice on some credit reports. The error can lower a borrower's credit score and take months to fix. Pimentel and other borrowers say credit agencies are not responsive and servicers are often uncertain about whether they can resolve the issue.

The problem is born out of a 2021 change in how student loan servicers that manage the government's $1.6 trillion education loan portfolio report transferred loans to credit reporting agencies, such as Experian, Equifax or TransUnion. Before 2021, the servicer handing over the loan would close the records associated with the account — known as a credit tradeline — and then the receiving servicer would open another. But that sometimes prevented borrowers from disputing their prior repayment history with the credit bureaus.

Now, the Education Department wants the servicer receiving the student loan to submit a file — known as an L1 segment — to the credit agencies signaling the debt transferred from another servicer and the prior history should be retained. The problem is that sometimes that file does not get processed correctly by the credit agencies, according to the Education Department.

In guidance obtained by The Washington Post, the department's Federal Student Aid office told student loan servicers this month that the processing errors are responsible for the duplicate records appearing on borrowers' credit reports. There is no way for servicers to know that the file failed to process or a duplicate record exists until a borrower complains or submits a dispute, according to the guidance.

The student aid office at the Education Department said it has alerted the credit agencies to what it called a "weakness" in the reporting process and notified federal and state regulators. In the meantime, the office has instructed servicers who initiate the transfer to delete or close the duplicate record when borrowers raise the issue. Yet deleting the file means borrowers can lose their prior repayment history.

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

None of the three credit bureaus responded to requests for comment.

The Consumer Data Industry Association, which represents the credit agencies, said in an email that the companies are aware of the problem and will work with student loan servicers to address the matter. The association recommends borrowers monitor their credit and report inaccurate or incomplete information to the bureaus.

In the course of the CFPB investigation, Pimentel received a letter in March from Nelnet saying the company requested that MOHELA and the credit agencies update her records to reflect the accurate balance. It took another two months before her credit report was fixed — about a year after she first discovered the error. By then, Pimentel had shelved her home search to give her credit score time to recover. Last week, she noticed her score increased by 34 points, enough of a jump to get her back on the path to homeownership.

"It is so demoralizing that despite never missing a payment and getting all of my finances in order, I've been stuck in this position," Pimentel said.

Weston Loehr, a doctor in Virginia, learned of the duplication error after noticing a $600,000 balance on his credit report in September. He initially thought it was a mistake in the app he used to review his credit, but Experian confirmed that two separate $300,000 balances were reported by his old servicer, Nelnet, and his new one, MOHELA.

He eventually filed an unsuccessful dispute with Experian. By April, he filed a complaint against Nelnet with the CFPB. A month later, Loehr saw the duplicate record was removed from his credit report.

"I spent a lot of days that I had off on the phone for hours," Loehr said. "Not everyone has the luxury of that time. There is the potential for this to truly affect people's ability to buy a house or a car."

Within days of issuing the guidance on the glitch, the student aid office asked Experian to review accounts that transferred between Nelnet and MOHELA — the source of an initial batch of borrower complaints, according to three people familiar with the matter. Since discovering 1.4 million duplicate records, the credit agency is expanding its review to all student loan servicers, an effort that experts say will probably uncover far more errors. The department confirmed that Experian has remediated the duplicates it has so far discovered.

---

**What readers are saying**

The comments reflect widespread frustration with the student loan system and credit reporting agencies. Many users describe issues with inaccurate credit reporting, particularly when loans are transferred between servicers, leading to prolonged disputes and negative impacts on...   Show more

This summary is AI-generated. AI can make mistakes and this summary is not a replacement for reading the comments.

FILED DATE: 7/10/2025 4:02 PM    2025CH07232

**EXHIBIT C**

# United States Senate

WASHINGTON, DC 20510

December 18, 2024

The Honorable Rohit Chopra
Director
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552

The Honorable Miguel Cardona
Secretary
U.S. Department of Education
400 Maryland Avenue, SW
Washington, D.C. 20202

Dear Director Chopra and Secretary Cardona:

We write to share the alarming findings of our investigation into millions of consumer credit reporting errors that occurred as a result of the faulty transfer of student borrower accounts from NelNet to MOHELA last year.[1] The results of our investigation suggest that MOHELA failed to provide advanced notice of the transfer to the credit reporting agencies ("CRAs"), contributing to nearly two million duplicate student loan records appearing on borrowers' credit reports and hundreds of thousands of borrowers' credit scores being wrongly reported for up to 1.5 years. We urge the Consumer Financial Protection Bureau (CFPB) and Department of Education (ED) to thoroughly review this matter and determine if MOHELA, NelNet, and the CRAs failed to comply with applicable guidance and federal law—and if so, to hold the relevant companies accountable.

In May 2024, alarming public reports indicated that an error in the 2023 transfer of millions of accounts[2] from NelNet to MOHELA resulted in borrowers' student loan balances appearing twice on their credit reports, and, in some cases, reducing their credit scores and their ability to obtain mortgages, car loans, and other credit.[3] At the time, it was unclear how many borrowers had been affected and whether the problems had been resolved.[4] Accordingly, in August 2024, our offices opened an investigation into this matter, sending inquiries to NelNet, MOHELA, and

---

[1] Washington Post, "How a paperwork glitch is hurting student loan borrowers' credit scores," Danielle Douglas-Gabriel, May 29, 2024, https://www.washingtonpost.com/education/2024/05/29/student-loan-balance-duplicates-credit-reports/; Letters from Senators Elizabeth Warren, Jeff Merkley, Ron Wyden, and Richard Blumenthal to NelNet, MOHELA, Experian, Equifax, and TransUnion, August 8, 2024, https://www.warren.senate.gov/imo/media/doc/20240808lettertomohelanelnetandcreditagenciesreloanbalanceduplicationerrorcombinedpdf.pdf.
[2] Letter from MOHELA to Senators Elizabeth Warren, Ron Wyden, Richard Blumenthal and Jeff Merkley, p. 3, https://www.warren.senate.gov/imo/media/doc/mohela_response_to_senators_-_082224.pdf.
[3] Washington Post, "How a paperwork glitch is hurting student loan borrowers' credit scores," Danielle Douglas-Gabriel, May 29, 2024, https://www.washingtonpost.com/education/2024/05/29/student-loan-balance-duplicates-credit-reports/.
[4] Id.

FILED DATE: 7/10/2025 4:02 PM 2025CH07232

the three largest credit reporting agencies, Equifax, Experian, and Transunion.[5] We inquired about what had gone wrong, how many borrowers had been affected, and what actions each party had undertaken to resolve the issues.[6]

After reviewing the companies' responses and soliciting supplemental responses where appropriate, we write to share the results of this investigation—which suggest that MOHELA's failure to provide advanced notice of the transfer to the CRAs contributed to nearly two million credit reporting errors.[7] Our investigation revealed that:

1. **MOHELA allegedly failed to inform the CRAs of the loan transfers from NelNet, contributing to nearly two million credit reporting errors.** According to the CRAs, there is an established protocol (codified by ED) for data furnishers (institutions that reports consumer credit information to one or more of the major credit bureaus)[8] when reporting transferred loans, using a mechanism called the "L1 Segment." [9]As one of the CRA's explained, "data furnishers are expressly instructed to provide advance notice to CRAs prior to reporting the transfer of large loan portfolios. Data furnishers are instructed to include in this notice information about the number of loans being transferred, the timing of the transfer, and the characteristics of the loans."[10] The CRAs explained that these practices are laid out in the Credit Reporting Resource Guide (CRRG), which is updated each year and referenced in ED's package of materials for the current federal student loan servicing contracts.[11] However, all of the CRAs reported that they did not always receive such notice from MOHELA.

   As a result, the CRAs identified nearly two million credit duplication errors stemming from loan transfers to MOHELA. One of the CRAs indicated that all of the approximately 1.5 million loan transfers from NelNet to MOHELA resulted in errors

---

[5] Letters from Senators Elizabeth Warren, Jeff Merkley, Ron Wyden, and Richard Blumenthal to NelNet, MOHELA, Experian, Equifax, and TransUnion, August 8, 2024, https://www.warren.senate.gov/imo/media/doc/20240808lettertomohelanelnetandcreditagenciesreloanbalanceduplicationerrorcombinedpdf.pdf.

[6] Letters from Senators Elizabeth Warren, Jeff Merkley, Ron Wyden, and Richard Blumenthal to NelNet, MOHELA, Experian, Equifax, and TransUnion, August 8, 2024, https://www.warren.senate.gov/imo/media/doc/20240808lettertomohelanelnetandcreditagenciesreloanbalanceduplicationerrorcombinedpdf.pdf.

[7] *Note*: At the request of the credit reporting agencies, we have anonymized the CRAs' responses because the companies have asserted that their responses contain confidential and proprietary information. Herein, when this letter references data in the companies' responses, all of the CRAs will be referred to as "one of the CRAs" or "one of the companies," so as to protect their anonymity.

[8] Business Insider, "What Is a Data Furnisher? Understanding Their Impact on Credit Reporting," Carter Kilmann, July 17, 2024, https://www.businessinsider.com/personal-finance/credit-cards/credit-furnisher.

[9] Washington Post, "How a paperwork glitch is hurting student loan borrowers' credit scores," Danielle Douglas-Gabriel, May 29, 2024, https://www.washingtonpost.com/education/2024/05/29/student-loan-balance-duplicates-credit-reports/.

[10] Response on file with the office of Senator Elizabeth Warren.

[11] *See*: MOHELA contracts attachments, "3000 Student Loan Credit Reporting Guide," copyright 2019, https://sam.gov/opp/47886c81fdc84d1990f63ab513e8af98/view; Consumer Data Industry Association, "2020 Credit Reporting Resource Guide®," 2020, p. 6-61, https://autodealerplus.com/dealerzone/metro2.pdf: FAQ 46 states, in relevant part "[i]f accounts are being transferred from one data processor to another, contact the data representative at each consumer reporting agency to facilitate transfer of the accounts."

since advanced notice was not given.[12] This company explained that, "MOHELA did not provide any advanced notice for the Loan Transfers as required by the protocol. In addition, loans with L1 Segments were reported commingled with loans without L1 Segments in the same large data files reported to [the CRA]. This commingling limited [the CRA]'s ability to identify loans with L1 Segments. Moreover, because advanced notice was not given, testing was not set up to confirm proper completion."[13] Consequently, all of the approximately 1.5 million loan transfers processed by this CRA were not processed correctly.[14]

Another CRA identified "approximately 119,000 tradelines for about 26,000 consumers reported by both NelNet and MOHELA without an instruction to update the current servicer."[15] And a third CRA's review, which covered duplicate student loan records reported by all of the large federal student loan servicers (Nelnet, MOHELA, EdFinancial, and AidVantage), found that 95 percent of duplicate records were accounts transferred to MOHELA—a total of 241,382 duplicate student loan records.[16] This company also noted that it believes that many of the errors involved the incorrect use of the L1 segment—if MOHELA used information in the L1 segment that was missing or did not correctly match with existing information, this "can result in the creation of a duplicate tradeline for potential inclusion in subsequent consumer reports."[17]

2. **Hundreds of thousands of borrowers[18] were affected by these errors, which were not corrected for as long as 1.5 years.[19]** Between the time when the duplicate errors began to occur (in January 2023) and when the CRAs claim to have fixed all the errors (by the end of August 2024), the CRAs collectively identified over 200,000 consumers affected by these mistakes. According to one CRA, "[a] total of 215,662 individual consumers had at least one duplicate loan on their credit file" as a result of the approximately 1.5 million loan transfers that were not processed correctly.[20] The duplicate tradelines identified by another CRA represented approximately 26,000 affected consumers.[21] And a third CRA reported that their duplicate records "involved approximately 55,650 individuals, a number that includes student loan borrowers, as well as coborrowers, and cosigners."[22]

3. **Overall, the CRAs identified over 100,000 cases in which the errors resulted in incorrect credit scores appearing on borrowers' accounts.** The three CRAs each provided information on the number of customers that had incorrect credit scores because

---

[12] Response on file with the office of Senator Elizabeth Warren.

[13] *Id.*

[14] *Id.*

[15] *Id.*; *Note*: a tradeline is a credit account listed on a credit report, and each account has its own tradeline. Thus, an error in the loan transfer between NelNet to MOHELA may have resulted in multiple tradelines being affected for each individual borrower.

[16] Response on file with the office of Senator Elizabeth Warren.

[17] *Id.*

[18] *Note*: Because there could be overlapping errors for individuals across the three ratings agencies, it is not clear exactly how many unique individuals were affected.

[19] Responses on file with the office of Senator Elizabeth Warren.

[20] *Id.*

[21] *Id.*

[22] *Id.*

FILED DATE: 7/10/2025 4:02 PM 2025CH07232

of this error. One reported that 25,132 customers had incorrect scores, one reported 5,340 customers with incorrect scores, and one reported 79,882 with incorrect scores.[23] According to the CRAs, the vast majority of consumers saw no change to their credit scores. While the majority of consumers whose credit scores did change as a result of these errors experienced an increase, approximately 14,000 borrowers experienced decreased credit scores, dropping from important benchmarks, including from credit scores above 800 to below 800 and from above 700 to below 700.[24] The vast majority of the borrowers who experienced declines saw significant declines in their scores: according to one CRA, "there were...approximately 4,400 borrowers who may have had their credit score decrease by more than twenty points."[25] Another CRA found 294 consumers who "had a lower credit score when both accounts were present."[26] Of those borrowers, the average reduction in credit score was approximately 18 points.[27] And a third CRA found that 2,915 individuals saw their credit score tier decrease.[28]

4. **Borrowers submitted approximately 7,500 complaints and disputes in attempts to correct the errors.** When borrowers notice an error on their credit report, they may submit a dispute with the CRAs regarding the error. One CRA reports having received "approximately 2,500 disputes over an 11-month period."[29] A second CRA received and processed "915 unique disputes cases (with 1,516 accounts disputed) regarding potential duplicate reporting of MOHELA or NelNet student loans from January 1, 2023, to July 31, 2024."[30] Between the beginning of 2023 through August 2024, a third CRA received "2,539 tradeline disputes concerning duplicate reporting involving student loan accounts serviced by MOHELA."[31] In addition, MOHELA reported receiving 1,554 borrower complaints regarding the duplicate loans.[32]

All of the CRAs reported that the duplicates have been resolved now.[33] One CRA reported that, after it discovered the issue in May 2024, it resolved all issues within 45 days.[34] A second said it resolved disputes within 12 calendar days.[35]

5. **None of the servicers or CRAs took responsibility for the credit reporting errors.** In its August 22, 2024 response to my office, MOHELA claimed that it "implemented and follows the applicable process required under its federal loan servicing contract."[36] When asked how MOHELA prepared for the transfer—including what instructions it gave to

---

[23] Response on file with the office of Senator Elizabeth Warren. *Note*: Because there may have been overlap in the affected borrowers, the estimates provided by the CRAs cannot be added to find the maximum number of affected borrowers.
[24] Response on file with the office of Senator Elizabeth Warren.
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] Letter from MOHELA to Senators Warren, Wyden, Blumenthal and Merkley, p. 3, https://www.warren.senate.gov/imo/media/doc/mohela_response_to_senators_-_082224.pdf.
[33] Response on file with the office of Senator Elizabeth Warren.
[34] *Id.*
[35] *Id.*

FILED DATE: 7/10/2025 4:02 PM 2025CH07232

FILED DATE: 7/10/2025 4:02 PM    2025CH07232

credit reporting agencies regarding the transfer— MOHELA simply responded that it "accurately provided the L1 Segment files to CRAs" but did not say that it had submitted advanced notice, as outlined by the CRRG, to the CRAs.[37]

The CRAs also did not take responsibility for the credit reporting errors. As described above, they attributed the errors to the loan servicers'—and particularly MOHELA's— failure to provide advanced notice regarding the loan transfers from NelNet to MOHELA.

6. **NelNet, MOHELA and the CRAs have no plans to compensate affected borrowers.** When asked how each company planned to compensate borrowers harmed by the reporting errors, NelNet, MOHELA, and the CRAs all reported having no plans to compensate affected borrowers. MOHELA and NelNet reiterated that they each believed they had done nothing wrong. One company expressed remorse, saying it "regrets any negative impact [the errors] may have had on [] borrowers,"[38] but outlined no plans to compensate borrowers. Another said it "has not been made aware of any direct harm to consumers."[39] The third CRA did not answer this question.

We respectfully request that the CFPB and ED use their supervisory and enforcement authority to ensure that the appropriate parties are held accountable for these errors. We also recognize that the scope of our review was limited to loans transferred from NelNet to MOHELA and encourage you to investigate duplicate student loan reporting errors across federal student loan servicing in order to determine the scope of the problem and ensure safeguards are in place such that similar mistakes do not occur again.

Thank you for your attention to this important matter.

Sincerely,

Elizabeth Warren
United States Senator

Jeffrey A. Merkley
United States Senator

[36] Letter from MOHELA to Senators Warren, Wyden, Blumenthal and Merkley, p. 2, https://www.warren.senate.gov/imo/media/doc/mohela_response_to_senators_-_082224.pdf.
[37] Letter from MOHELA to Senators Warren, Wyden, Blumenthal and Merkley, p. 3, https://www.warren.senate.gov/imo/media/doc/mohela_response_to_senators_-_082224.pdf.
[38] Response on file with the office of Senator Elizabeth Warren.
[39] *Id.*

FILED DATE: 7/10/2025 4:02 PM    2025CH07232

Richard Blumenthal
United States Senator

Ron Wyden
United States Senator

6



## Service of Process Transmittal Summary

**TO:**    Kelly Rickenbach, Esq.
Stewart Title Company
1360 POST OAK BLVD STE 100, MC-14
HOUSTON, TX 77056-3837

**RE:**    **Process Served in California**

**FOR:**    INFORMATIVE RESEARCH  (Domestic State: CA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | ALEXANDER LUNDRIGAN, individually and as a representative of the Class vs. INFORMATIVE RESEARCH, INC. |
| **CASE #:** | 2025CH07232 |
| **PROCESS SERVED ON:** | C T Corporation System, GLENDALE, CA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 07/14/2025 at 12:56 |
| **JURISDICTION SERVED:** | California |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  Litigation Department  litigation@stewart.com |
| | Email Notification,  Kelly Rickenbach, Esq.  kelly.rickenbach@stewart.com |
| | Email Notification,  Kelly Rickenbach, Esq.  kelly.rickenbach@stewart.com |
| | Email Notification,  Ivan Vasquez  ivasquez@stewart.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System |
| | 330 N BRAND BLVD |
| | STE 700 |
| | GLENDALE, CA 91203 |
| | 8775647529 |
| | MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

 Wolters Kluwer

# PROCESS SERVER DELIVERY DETAILS

**Date:**                         Mon, Jul 14, 2025
**Server Name:**              DROP SERVICE

| Entity Served | INFORMATIVE RESEARCH INC |
|---|---|
| Case Number | 2025CH07232 |
| Jurisdiction | CA |

| Inserts | | |
|---|---|---|
| | | |





**JOHN G. ALBANESE** / *SHAREHOLDER*
**d** 612.594.5997 **m** 202.714.9155 | jalbanese@bm.net

<u>**VIA MESSENGER**</u>
Informative Research, Inc.
c/o Registered Agent CT Corporation System
330 N Brand Blvd., Suite 700
Glendale, CA 91203

**Re:** ***Alexander Lundrigan, individually and as a representative of the Class v.***
***Informative Research, Inc.*, No. 2025CH07232 (Cook Cnty. Cir. Ct.)**

To Defendant,

Enclosed and served upon you, please find:

1. Summons;
2. Complaint with Exhibits;
3. Civil Cover Sheet

We will be requesting electronic and other documentary evidence during discovery in the above-referenced matter. We believe that this evidence will be of critical importance and want to ensure that you preserve the types of documentary and electronic evidence that we will be requesting.

As you may be aware, "[w]hen a lawyer who has been retained to handle a matter learns that litigation is probable or has been commenced, the lawyer should inform the client of its duty to preserve potentially relevant documents and of the consequences of failing to do so." Standard 10, Preservation of Documents, ABA Civil Discovery Standards (Aug. 2004). This duty "applies to information stored in an electronic medium or format…" *Id.* at Standard 29.

Various kinds of electronic data will be important in this lawsuit. The data that we anticipate will be relevant includes, but is not limited to, the following:

- The portions of any database or system maintained or used that contain Plaintiff's and class members' consumer reports;

- Emails and other electronic documents pertaining to Defendant's policies, practices, and procedures for generating and providing consumer reports;

- Emails and other electronic documents pertaining to Defendant's compliance with the Fair Credit Reporting Act.



We request that Defendant perform offline backups of any databases which contain information about loans taken out by Plaintiff and class members. We also request that Defendant perform offline backups of all current Microsoft Exchange (or other email) databases to external hard drives, preserving their native format, such as .edb files. These backups should be done for any custodians likely to have discoverable information including individuals in the following departments: Compliance, Legal, and IT, as well as any other individuals who have knowledge of or were trained on Defendant's consumer reporting policies and practices. The backups should include the Private Information Store and Public Information Store folders, and should be done routinely from this point forward.

The laws and rules prohibiting destruction of evidence apply to electronically stored information in the same manner that they apply to other evidence. Therefore, we request that Defendant take every reasonable step to preserve this information until the final resolution of this matter and discontinue all data destruction activities, including, but not limited to, backup tape recycling policies, any automatic email deletion functions, and disposal of any relevant hardware or data storage. In short, we request that the utmost care be taken in the preservation of all relevant electronic data.

Sincerely,

John G. Albanese

Encl.

Hearing Date: 9/8/2025 10:30 AM
Location: Court Room 2102
Judge: Atkins, David B.

Case: 1:25-cv-09574 Document #: 1 Filed: 08/12/25 Page 46 of 52 PageID #:96

FILED
7/10/2025 4:02 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025CH07232
Calendar, 16
33513392

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

# SUMMONS

### IN THE STATE OF ILLINOIS, CIRCUIT COURT

☐ **Alias Summons**
*Check if this is not the 1st Summons issued for this Defendant/Respondent.*

**COUNTY:** Cook
*County Where You Are Filing the Case*

*Enter the case information as it appears on your other court documents.*

**PLAINTIFF/PETITIONER OR IN RE:** Alexander Lundrigan
*Who started the case.*          *First, Middle, and Last Name or Business Name*

**2025CH07232**

**Case Number**

**DEFENDANTS/RESPONDENTS:** Informative Research, Inc.
*Who the case was filed against.*

*First, Middle, and Last Name or Business Name*

## The Defendant/Respondent named above has been sued. Read this form for information about how to respond to this lawsuit. Also see page 4 for next steps.

**For the person filling out this form: Read all instructions in this box.**

This *Summons* can only be used for certain types of cases. See the *How To Serve a Summons* Instructions for more information: ilcourts.info/summons-instructions.

Check 1 if this is a 30-day summons, or check 2 if this is a date certain summons. Fill in all the information in 1 or 2.

- Use a **date certain summons** if you are asking for money of $50,000 or less or recovery of your personal property that you think the Defendant has, and for some mandatory arbitration cases. In 2, fill in your court date and how to go to court. You may get the court date when you e-file or you may need to ask the Circuit Clerk's office.

- Use a **30-day summons** for most other case types.

Complete the rest of the form with the Defendant/Respondent's information and information about the lawsuit.

**If you are suing more than 1 Defendant/Respondent**, attach an *Additional Defendant/Respondent Address and Service Information* form for **each** additional Defendant/Respondent.

☑ **1. 30-DAY SUMMONS**

To participate in this case, you must **file** your *Appearance* and *Answer/Response* forms with the court within 30 days after you are served with this *Summons* (not counting the day of service) by e-filing or at:

Court Address: 50 W Washington, Room 802, Chicago, IL
*Courthouse Street Address*

**- or -**

☐ **2. DATE CERTAIN SUMMONS**

*Your court date is listed below. Information about getting a court date and how to attend is available from the Circuit Clerk. You can find their contact information at ilcourts.info/CircuitClerks.*

To respond to this *Summons*, you must **attend court** in one of the ways checked below on:

_____ at _____ ☐ a.m. ☐ p.m. in _____.
*Month, Day, Year*          *Time*               *Courtroom Number*

Case Number: _____

FILED DATE: 7/10/2025 4:02 PM  2025CH07232

## Going to Court for a Date Certain Summons

Court dates may be in-person, remote, or a combination of in-person and remote.

☐ **In person** at: _____
  *Courtroom Address*                                    *Courtroom Number*

☐ **Remotely** (video or telephone)

  **By video conference** at: _____
    *Video Conference Website*

    Log-in information: _____
      *Video Conference Log-in Information, Meeting ID, Password, etc.*

  **By telephone** at: _____
    *Call-in Number for Telephone Remote Appearance*

  To find out more about remote court options:

  Phone: _____  or  Website: _____
    *Circuit Clerk's Phone Number*                        *Website URL*

_____    _____    _____

## 3. ADDITIONAL INFORMATION ABOUT THE LAWSUIT

a. I am asking for the following amount of money in my *Complaint/Petition*: $ <u>See Claim for Relief</u>.

  *(Enter 0 if you are not asking for money)*

b. I am asking for the return of tangible personal property (items in the Defendant/Respondent's possession) in my *Complaint/Petition*.

  ☐ Yes   ☑ No

## 4. DEFENDANT/RESPONDENT'S INFORMATION

a. Number of Defendants/Respondents being served:

  ☑ I am having 1 Defendant/Respondent served and their information is on this form below.

  ☐ I am having more than 1 Defendant/Respondent served. The first is listed below. I have attached *Additional Defendant/Respondent Address and Service Information* forms for the following number of additional Defendants/Respondents: _____.
    *Number*

b. First Defendant/Respondent's **primary address/information** for service:

  Name: <u>Informative Research, Inc.</u>
    *First, Middle, and Last Name, or Business Name*

  Registered Agent's Name *(if you are serving the Registered Agent of a business)*:

  <u>CT Corporation System</u>
    *First, Middle, and Last Name*

  Street Address: <u>330 N Brand Blvd, Suite 700</u>
    *Street, Apt #*

  City, State, ZIP: <u>Glendale, CA 91203</u>
    *City*                              *State*          *Zip*

  Telephone: <u>(855) 316-8944</u>         Email: _____

2025CH07232

*Case Number:* _____

c. **Second address** for this Defendant/Respondent:
☐ I do **not** have another address where the Defendant/Respondent might be found.
☑ I have another address where this Defendant/Respondent might be found. It is:

Street Address: 13030 Euclid Street _____
             *Street, Apt #*

City, State, ZIP: Garden Grove, CA 92843 _____
         *City*                            *State*        *Zip*

Telephone: _____  Email: _____

d. Person who will serve your documents on this Defendant/Respondent:
☐ Sheriff in Illinois  ☑ Special process server  ☐ Licensed private detective
☐ Sheriff outside Illinois: _____
                             *County & State*

---

**PLAINTIFF/PETITIONER INFORMATION:**
*Enter your information below.*
Name Alexander Lundrigan _____
    *First, Middle and Last Name*

Registered Agent's name, if any c/o Counsel John G. Albanese, Berger Montague PC
                                  *First, Middle and Last Name*

Street Address 1229 Tyler St NE, Suite 205 _____
              *Street, Apt #*

City, State, ZIP: Minneapolis, MN 55413 _____
         *City*                              *State*        *Zip*

Telephone: (612) 594-5997 _____  Email: jalbanese@bergermontague.com

Be sure to **check your email every day** so you do not miss important information, court dates, or documents from other parties.

---

**STOP** The Circuit Clerk and officer or process server will fill in this section.

**To be filled in by the Circuit Clerk:**

Witness this Date: _____

Clerk of the Court: 7/10/2025 4:02 PM Mariyana T. Spyropoulos _____

**To be filled in by an officer or process server:**

Date of Service: _____

*Fill in the date above and give this copy of the Summons to the person served.*

---

**Note to officer or process server:**

- If 1 is checked, this is a 30-day *Summons* and must be served within 30 days of the witness date.
- If 2 is checked, this is a date certain *Summons* and must be served at least 21 days before the court date, unless 3b is checked yes.
  - If 2 is checked **and** 3b is checked yes, the *Summons* must be served at least 3 days before the court date.
- Fill in the date above and give this copy of the *Summons* to the person served.
- You must also complete the attached *Proof of Service* form and file it with the court or return it to the Plaintiff.

FILED DATE: 7/10/2025 4:02 PM 2025CH07232

2025CH07232

*Case Number:* _____



# WHAT'S NEXT

## NEXT STEPS FOR PERSON FILLING OUT THIS FORM:

When you file a lawsuit, you must notify the person or business you are suing of the court case by having the *Summons* and Complaint or Petition delivered to them. This is called "serving" them.

File your *Summons* and Complaint or Petition with the Circuit Clerk in the county where your court case should be filed. The Circuit Clerk will "issue" the *Summons* by putting a court seal on the form.

Have the sheriff or a private process server serve the *Summons* and a copy of the Complaint or Petition on the Defendant/Respondent. You cannot serve the *Summons* yourself.

 Learn more about each step in the process and how to file in the instructions: ilcourts.info/summons-instructions.

## NEXT STEPS FOR PERSON RECEIVING THIS DOCUMENT:



**You have been sued:**
- ○ Read all documents attached to this *Summons*.
- ○ All documents referred to in this *Summons* can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.
- ○ You may be charged filing fees, but if you cannot pay them, you can file an *Application for Waiver of Court Fees (Civil)*.
- ○ When you go to court, it is possible that the court will allow you to attend the first court date in this case in-person or remotely by video or phone. Contact the Circuit Court Clerk's office or visit the Court's website to find out whether this is possible and, if so, how to do this.

**If Section 1 on page 1 of this *Summons* is checked (30-day summons*):***
- ○ You **must** file official documents called an *Appearance* and an *Answer/Response* with the court within 30 days of the date you were served with this *Summons*.
- ○ If you do not file an *Appearance* and *Answer/Response* on time, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.
- ○ After you fill out the necessary documents, you need to electronically file (e-file) them with the court. To e-file, you must create an account with an e-filing service provider. For more information, go to ilcourts.info/efiling. If you cannot e-file, you can get an exemption that allows you to file in-person or by mail.
- ○ You should be notified of any future court dates.

**If Section 2 on page 1 of on this *Summons* is checked (date certain summons):**
- ○ You **must** attend court on the date listed in Section 2 of this *Summons*.
- ○ If you do not attend that court date, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.

**Need Help? ¿Necesita ayuda?**
- ○ Call or text Illinois Court Help at 833-411-1121 or go to ilcourthelp.gov for information about going to court, including how to fill out and file documents.
- ○ Llame o envíe un mensaje de texto a Illinois Court Help al 833-411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.
- ○ You can also get free legal information and legal referrals at illinoislegalaid.org.
- ○ If there are any words or terms that you do not understand, please **visit Illinois Legal Aid Online** at ilao.info/glossary. You may also find more information, resources, and the location of your local legal self-help center at: ilao.info/lshc-directory.

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

2025CH07232

Case Number: _____

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

# PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION

IN THE STATE OF ILLINOIS, CIRCUIT COURT

☐ **Alias Summons**
*Check if this is not the 1ˢᵗ Summons issued for this Defendant/Respondent.*

**COUNTY:** Cook _____
*County Where You Are Filing the Case*

*Enter the case information as it appears on your other court documents.*

**PLAINTIFF/PETITIONER OR IN RE:** Alexander Lundrigan _____
*Who started the case.*          *First, Middle, and Last Name or Business Name*

**DEFENDANTS/RESPONDENTS:** Informative Research, Inc. _____
*Who the case was filed against.*

_____

_____
*First, Middle, and Last Name or Business Name*

2025CH07232
_____
**Case Number**

**STOP** Do not complete the rest of the form. **The sheriff or special process server will fill in the form.**
Give them one copy of this blank *Proof of Service* form for each Defendant/Respondent who will be served.

My name is _____ and I state:
          *Officer/Process Server First, Middle, Last Name*

## SERVICE INFORMATION

Defendant/Respondent: _____
                    *First, Middle, Last Name, or Business Name*

☐ I was not able to serve the *Summons* and Complaint/Petition on the Defendant/Respondent named above.

- or -

☐ I served the *Summons* and Complaint/Petition on the Defendant/Respondent named above as follows:

☐ **Personally** on the Defendant/Respondent:
   ☐ Male ☐ Female ☐ Non-Binary · Approx. Age: _____ Race: _____

   On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

   Address, Unit#: _____

   City, State, ZIP: _____

☐ On **someone else at the Defendant/Respondent's home** who is at least 13 years old and is a family member or lives there:
   Name of person served: _____
                         *First, Middle, Last Name*
   ☐ Male ☐ Female ☐ Non-Binary  Approx. Age: _____ Race: _____

   On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

   Address, Unit#: _____

   City, State, ZIP: _____
   and by sending a copy to this Defendant/Respondent in a postage-paid, sealed envelope to the above

   address on this date: _____.

2025CH07232

FILED DATE: 7/10/2025 4:02 PM   2025CH07232

*Case Number:* _____

☐ On the **Business's agent:** _____

*First, Middle, Last Name*

☐ Male ☐ Female ☐ Non-Binary  Approx. Age: _____  Race: _____

On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address, Unit#: _____

City, State, ZIP: _____

## SERVICE ATTEMPTS

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

**First Attempt:** On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address, Unit#: _____

City, State, ZIP: _____

Other information about service attempt:

_____

_____

_____

**Second Attempt:** On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address, Unit#: _____

City, State, ZIP: _____

Other information about service attempt:

_____

_____

_____

**Third Attempt:** On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address, Unit#: _____

City, State, ZIP: _____

Other information about service attempt:

_____

_____

_____

## SIGN

I certify under 735 ILCS 5/1-109 that:

1) everything in this document is true and correct, or I have been informed or I believe it to be true and correct, and

2) I understand that making a false statement on this form is perjury and has penalties provided by law.

Your Signature */s/* _____  Print Your Name _____

You are: ☐ Sheriff in Illinois          ☐ Special process server
  ☐ Sheriff outside Illinois: _____  ☐ Licensed private detective, license number: _____

  *County and State*                                                    *License number*

**FEES:**

  Service and Return: $_____  Miles: $_____  Total: $_____

FILED DATE: 7/21/2025 2:45 PM   2025CH07232

| *Attorney or Party without Attorney:* | *For Court Use Only* |
|---|---|
| John G. Albanese, Esq. (SBN 6308461) Berger Montague PC 1229 Tyler St NE Suite 205 Minneapolis, MN 55413 | FILED 7/21/2025 2:45 PM Mariyana T. Spyropoulos CIRCUIT CLERK COOK COUNTY, IL 2025CH07232 Calendar, 16 33656441 |

| | |
|---|---|
| Telephone No: 612-594-5995 | |
| Attorney For: Plaintiff | Ref. No. or File No.: 25162 |

*Insert name of Court, and Judicial District and Branch Court:*
IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS CHANCERY DIVISION

Plaintiff: Alexander Lundrigan
Defendant: Informative Research, Inc.

| **PROOF OF SERVICE** | Hearing Date: | Time: | Dept/Div: | Case Number: 2025CH07232 |
|---|---|---|---|---|

1.   *At the time of service I was at least 18 years of age and not a party to this action.*

2.   I served copies of the Summons; Class Action Complaint; Chancery Division Civil Cover Sheet

3.   *a.*   Party served:      Informative Research, Inc.
      *b.*   Person served:   Sarai Marin, Intake Specialist for CT Corp, Registered Agent

4.   *Address where the party was served:*   330 North Brand Boulevard Suite 700, Glendale, CA 91203

5.   *I served the party:*
      a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Mon, Jul 14 2025 (2) at: 12:40 PM

                                                                        Recoverable cost Per CCP 1033.5(a)(4)(B)

6.   **Person Who Served Papers:**
      a. Douglas Forrest (5141, Los Angeles)                          **d.** *The Fee* for Service was:
      **b. FIRST LEGAL**                                                          **e.** I am: A Registered California Process Server
          1517 W. Beverly Blvd.
          LOS ANGELES, CA 90026
      c. (213) 250-1111

7.   *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

07/15/2025
_____                    _____
*(Date)*                                                                  *(Signature)*



Judicial Council Form                              **PROOF OF**                          *13704459*
Rule 2.150.(a)&(b) Rev January 1, 2007             **SERVICE**                          *(409295)*